**Ken LINDLOFF**

v.

**SCHENECTADY INTERNATIONAL.**

**Civil Action No. G–97–053.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 14, 1997.

John Gerard Werner, Reaud Morgan and Quinn, Beaumont, TX, for Plaintiff.

Patricia Hair, Crain, Caton & James, Houston, TX, for Defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff filed this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., alleging that he was illegally terminated on the basis of a disability. Now before the Court is Defendant's Motion for Summary Judgment of April 11, 1997. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED.**

Plaintiff was a flaking plant leadman at the flaking plant in Defendant's Lake Jackson, Texas facility. In July, 1993, Plaintiff noticed white spots on his skin and went to see the company doctor. The company doctor referred him to a skin specialist, Dr. Frank Peltier, who diagnosed Plaintiff as having leukoderma, a loss of pigmentation on areas of the skin. Plaintiff's leukoderma was apparently caused by exposure to phenolic compounds, which are found in the major products handled by Defendant in its Lake Jackson facility. Dr. Peltier recommended that Plaintiff avoid exposure to these phenolic compounds and protect his skin when he

was in the sun. Plaintiff returned to full duty in the flaking plant and wore protective gear. Plaintiff returned to Dr. Peltier in September, 1993 because his leukoderma had spread to other parts of his body. Dr. Peltier recommended that Plaintiff leave the high-exposure area of the flaking plant and continue to protect his skin from the sun. After this visit, Defendant notified Plaintiff that he could no longer work in the flaking area and that he would be reassigned to a low-exposure area to do shipping and receiving work. Plaintiff had check-ups for his leukoderma every three months, at which he was told to stay in low-exposure areas, wear protective equipment, and protect his skin from the sun.

On November 8, 1994, Dr. Peltier again saw Plaintiff and stated in a letter to a Dr. Giannone that his leukoderma had progressed since he saw Plaintiff in September, 1993. Dr. Peltier hypothesized that Plaintiff may have become so sensitive to phenolic agents that inhalation of these agents was causing progression of the leukoderma. As a result, Dr. Peltier recommended that Plaintiff avoid phenolic compound exposure. On November 15, 1994, Dr. Giannone sent a letter to Mike Vitek, manager of Human Resources and Training for Defendant, recommending that Plaintiff completely avoid any phenolitic compounds or exposure to them. Dr. Giannone indicated that he had discussed this recommendation with Plaintiff and that Plaintiff understood that it meant a change in his employment position. Plaintiff was subsequently discharged from Defendant's employ.

Plaintiff filed suit against Defendant under the ADA, contending that Defendant illegally terminated him on the basis of his leukoderma,[1] an alleged disability under the ADA. Defendant seeks summary judgment on Plaintiff's claims against it and contends that leukoderma is not a disability under the ADA.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder

---

1. In the various responses to Defendant's Motion for Summary Judgment, Plaintiff seems to contend that he has another disability in that he is clinically depressed. The Court notes that Plaintiff's Complaint refers only to one disability, leukoderma, and there is no allegation in the Complaint that Plaintiff was discharged because of depression. Plaintiff has presented evidence that he has been diagnosed as depressed and is seeking counseling for this depression. This depression, however, seems to have resulted from the loss of his job. There is no evidence, however, that Plaintiff was clinically depressed at the time he was discharged, that Defendant was aware of any depression, or that Defendant discharged Plaintiff because of his depression. For this reason, and because Plaintiff only pled leukoderma as a disability in his Complaint, the Court finds that Plaintiff's vague claims that he was discharged on the basis of his depression are without merit.

could not find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

To prevail on a discrimination claim under the ADA, a plaintiff must prove 1) that he has a "disability"; 2) that he is "qualified" for the job; and 3) that an adverse employment decision was made solely because of his disability. *Turco v. Hoechst Celanese Chemical Group, Inc.,* 101 F.3d 1090, 1092 (5th Cir. 1996) (citing *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 763 (5th Cir.1996)). The regulations enacted pursuant to the ADA define "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual," a "record of such an impairment," or "[b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (1996) [2] "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). "Substantially limits" is defined as "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which an average person in the general population can perform the same major life activity." *Id.* § 1630.2(j). A person is regarded as having a disability if he or she "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation," "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairment," or "[h]as none of the impairments defined in [29 C.F.R. § 1630.2(h)] but is treated by a covered entity as having a substantially limiting impairment." *Id.* § 1630.2(1).

■ Plaintiff in this case is afflicted with leukoderma, a loss of pigmentation on areas of the skin, which is manifested in Plaintiff as white spots on various areas of his body. This affliction likely qualifies as a physical impairment under the regulations implementing the ADA. It does not, however, qualify as a disability. There is no evidence in the record that leukoderma substantially limits any of Plaintiff's major life activities. Rather, Plaintiff appears to lead a rather normal life, with his only restrictions being that he cannot expose himself to phenolic compounds and must protect his skin from the sun by wearing sunscreen or clothes when he is in the sun. The Court finds that these restrictions are not sufficient to find that Plaintiff's leukoderma substantially limits any major life activity. It is true that Plaintiff is restricted from holding jobs that would expose him to phenolic compounds but being limited from such a narrow range of jobs does not qualify Plaintiff as being substantially limited in the major life activity of working. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir.1995) ("'An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one.'") (quoting *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 n. 3 (6th Cir.1985) (interpreting the Rehabilitation Act)). Thus, the Court finds that Plaintiff's leukoderma is not a disability under the first definition of such because it does not substantially limit any major life activities.

■ The Court further finds that Plaintiff is not regarded as having a disability, despite his claims to the contrary. There is no evidence that Defendant regarded Plaintiff as having a disability. Rather, all the evidence suggests that Defendant believed Plaintiff was capable of performing the functions of his employment despite the leukoderma but had to be discharged because of Dr. Peltier's recommendation that he avoid phenolic compounds for his own health. The fact that Defendant did not regard leukoderma as disabling is further emphasized by the fact that Defendant employed other workers with leukoderma whose sensitivity to phenolic compounds were not as severe as Plaintiff's. Because all the evidence suggests that Defendant did not regard Plaintiff's leukoderma as a disability, the Court finds that Plaintiff

---

**2.** Only the first and the third definition are relevant in this case.

does not have a disability under a "perceived disability" theory.

The Court sympathizes with Plaintiff and understands that his leukoderma and the loss of his job have generated a lot of anxiety and turmoil in Plaintiff's life. It appears, however, that Defendant tried its best to accommodate Plaintiff but that Plaintiff had to be removed from the plant for his own health. This event has certainly been an unfortunate one for Plaintiff, but the Court simply cannot find, on the basis of the evidence presented, that Plaintiff's leukoderma is a disability under the ADA. Plaintiff may have some sort of tort claim against Defendant for exposing him to the phenolic agents,[3] which is for the courts of the State of Texas to decide, but he does not have an ADA claim.

Therefore, for the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED.** Each and every claim herein asserted by Plaintiff against Defendant is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are instructed to file nothing further on these issues in this Court, including motions to reconsider and the like, unless compelling evidence warrants such a reconsideration. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order issued by the Court this date, Defendant's Motion for Summary Judgment is **GRANTED.** Each and every claim herein asserted by Plaintiff against Defendant is **DISMISSED WITH PREJUDICE.** Each party is **ORDERED** to bear his or its own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

---

**3.** The Court notes, however, that Plaintiff already received workers' compensation benefits in the form of temporary income benefits as a result of his exposure to phenolic compounds, and this award of benefits may affect his ability to pursue a tort action against Defendant.